**No. 23-4421; 23-4143**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

Jamie Elward,

*Plaintiff-Appellant and Cross-Appellee*,

v.

Sealy, Inc., a foreign corporation,

*Defendant-Appellee and Cross-Appellant*.

On Appeal from the United States District Court
for the Western District of Washington
No. 3:22-cv-05645-BHS
Hon. Benjamin H. Settle

---

### APPELLANT'S REPLY/CROSS APPEAL THIRD BRIEF

---

**Attorneys for Plaintiff-Appellant and Cross-Appellee Jamie Elward**

Hugh J McGavick
Law Office of Hugh J. McGavick, PS
855 Trosper RD SW #108-298
Tumwater, WA 98512
360.867.0215
Hugh@hughmcgavick.com
WSBA #12047

Asa C. Garber
Reason Legal, LLC
150 S. Harrison St., Unit 1
Denver, CO 80209
720.504.5294
asa@reasonlegal.com
WSBA #43588

# TABLE OF CONTENTS

I.    Introduction ................................................................................1

II.   Reply regarding Defendant's summary judgment ........................2

      A.    Defendant's response relies on and resolves—in its own favor—numerous factual disputes and inferences. ..........................................2

            1.    Defendant draws inferences to dismiss nine weeks of a slowly-escalating sexual harassment campaign and claim there was no connection between the harassment and Plaintiff's work conditions. ................................................................3

            2.    Defendant's attempt to undermine the reality and significance of an invitation to the supervisor's conference requires sweeping inferences drawn in Defendant's favor and contrary to Perez's assurances and Plaintiff's behavior. ...........................15

            3.    Defendant cannot avoid a jury resolving highly factual inquiries whether Defendant acted unreasonably when it failed to adequately hold Perez accountable for prior sexual harassment, failed to monitor Perez with Plaintiff, and did not acknowledge or condemn the harassment Plaintiff suffered from him. .........18

            4.    Defendant cannot secure summary judgment based upon inferences detached from reality. ...............................................22

            5.    Summary: Factual conflicts coupled with Defendant's self-serving inferences preclude summary judgment in Defendant's favor ................................................................28

      B.    Perez was a manager with actual and apparent authority sufficient to support a *quid pro quo* claim. ...........................................29

      C.    Defendant's claim that apparent authority and the threat of retaliation aren't properly before this Court is without merit. .............................32

      D.    The conflicting history of decisions of the Washington Court of Appeals weighs in favor of certifying the question or denying

adoption here of the *Faragher-Ellerth* defense for Washington state law..................................................................................................34

**E.** Conclusion for Reply relating to Defendant's Summary Judgment ...37

**III.** Response to discovery DIspute Cross-Appeal ................................................38

**A.** Standard of Review for Sanctions ......................................................38

**B.** From mutually-imperfect discovery, Defendant seeks to avoid the merits of the case based upon Defense Counsel's unfounded and factually-contradicted speculation. ..................................................39

**C.** Discovery Timeline for Defendant's Cross-Appeal ..........................42

**D.** The trial court's findings of fact, supporting that sexual harassment occurred, were not clearly erroneous..................................................47

**E.** The trial court did not abuse its discretion in finding Defendant was not prejudiced. ....................................................................................49

**F.** There is no evidence of bad faith or an intent to deprive here............51

**G.** Dismissal is not warranted under these facts. ....................................51

   **1.** "Public's Interest in Expeditious Resolution of Litigation".....52

   **2.** "The court's need to manage its docket"................................52

   **3.** "The risk of prejudice to the party seeking sanctions".............52

   **4.** "The public policy favoring disposition of cases on their merit" ...................................................................................................54

   **5.** "The availability of less drastic sanctions" ...............................55

   **6.** Conclusion: The trial court correctly refused to impose sanctions. ...................................................................................56

**VI.** Conclusion .......................................................................................................56

iii

## TABLE OF AUTHORITIES

**Cases**

*Adams v. Able Bldg. Supply, Inc.,*
    114 Wn. App. 291, 57 P.3d 280 (2002)…………………………………………13

*Adriana Intern. Corp. v. Thoeren*,
    913 F.2d 1406 (9th Cir. 1990)………………………………………………52, 55

*Anheuser-Busch v. Natural Beverage Distributors*,
    69 F.3d 337 (9th Cir. 1995)……………………………………………………...54

*Barker v. W.A. Botting*,
    121 Wn.App. 1030 (2004)……………………………………………………….35

*Blackburn v. State*,
    186 Wn.2d 250, 375 P.3d 1076 (2016)……………………..………………...36

*Brooks v. City of San Mateo*,
    229 F.3d 917 (9th Cir. 2000)……………………………………………………...8

*Burlington Industries, Inc. v. Ellerth*,
    524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)
    ……..………………………………………………......3, 18, 34, 35, 36, 37, 38, 56, 57

*Calcote v. City of Seattle*,
    7 Wn.App. 2d 1019 (2019) (unpublished)…………………………....……….35

*Campbell v. State,*
    129 Wn. App. 10, 118 P.3d 888 (2005)…………………………34, 35, 36

*Clarkson v. Alaska Airlines, Inc.*,
    59 F.4th 424 (9th Cir. 2023) ………3, 9, 14, 16, 18, 19, 20, 23, 25, 28, 29, 37

*Cornwell v. Microsoft Corp*.,
    192 Wn.2d 403, 430 P.3d 229 (2018)............................................2, 8, 28, 31

*Davis v. Fred's Appliance, Inc.*,
　　171 Wn. App. 348, 287 P.3d 51 (2012)………....................................34, 35

*DeWater v. State*,
　　130 Wn.2d 128, 921 P.2d 1059 (1996)………................................................32

*DLS v. Maybin*,
　　130 Wn. App. 94, 121 P.3d 1210 (2005)…………...………….................30

*Ellison v. Brady*,
　　924 F.2d 872 (9th Cir. 1991)…………………...………………………...22

*Faragher v. Boca Raton*,
　　524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)
　　………...………………………………….………3, 18, 19, 34, 35, 36, 37, 38, 56, 57

*Fuller v. City of Oakland, California*,
　　47 F.3d 1522 (9th Cir. 1995).......………………….....................................21

*Glasgow v. Georgia-Pacific*,
　　103 Wn.2d 401, 693 P.2d 708 (1985)…………….……………………...6, 35

*Halaco Engineering Co. v. Costle*,
　　843 F.2d 376 (9th Cir. 1988)……………………………………………….38

*Harris v. Sutton Motor Sales & RV Consignments Corp.*,
　　406 F.App'x 181 (9th Cir. 2010) (unpublished)…………………………….8

*Haubry v. Snow*,
　　106 Wn. App. 666, 31 P.3d 1186 (2001)…………………………….............6

*Henningsen v. Worldcom, Inc.*,
　　102 Wn.App. 828, 9 P.3d 948 (2000)……………….…….11, 12, 23, 33, 54

*Livingston v. Isuzu Motors, Ltd.*,
　　910 F.Supp. 1473 (D. Montana 1995)…………….....………………..42, 54

*Majors v. Charles Loomis, Inc.*,
　　120 Wn.App. 1066 (2004) (unpublished)………………………………….35

v

*Martini v. Boeing Co.*,
　　137 Wn.2d 357, 971 P.2d 45 (1999)……………………………………36

*Mikkelsen v. Public Utility District No. 1*,
　　189 Wn.2d 516, 404 P.3d 464 (2017)…………………………………….2

*Pagtalunan v. Galaza*,
　　291 F.3d 639 (9th Cir. 2022)……………………………………………52

*Perry v. Costco Wholesale, Inc.*,
　　123 Wn. App. 783, 98 P.3d 1264 (2004)………………………….........18

*Robel v. Roundup*,
　　148 Wn.2d 35, 59 P.3d 611 (2002)………………………...11, 34, 35, 36, 37

*Robello v. Mandalay Corp.*,
　　740 F.App'x 607 (9th Cir. 2018) (unpublished)….......................................8

*Sangster v. Albertson's, Inc.*,
　　99 Wn. App. 156, 991 P.2d 674 (2000)………2, 8, 28, 31, 34, 35, 37, 38, 56

*Storey-Howe v. Okanogan Cty.*,
　　188 Wn. App. 1065 (2015)……………………….……………34, 35, 36, 37

*Thompson v. Berta Enterprises*,
　　72 Wn. App. 531, 864 P.2d 983 (1994)………………………...............14

*Thompson v. Housing Auth. of City of Los Angeles*,
　　782 F.2d 829 (9th Cir. 1986)……………………………………………52

**Statutes**

RCW 49.60.010…………………………………………………….............55

RCW 49.60.020………………………………………………………….....55

RCW 49.60.030……………………………………………………….…..58

RCW 49.60.180………………………………………………………….....55

vi

**Regulations**

29 C.F.R. § 1604.11(f)…………………………………………………..…22

**Rules**

Fed.R.Civ.P. 1…………………………………………………………50, 56

Fed.R.Civ.P. 26……………………………………………………..50, 56

Fed.R.Civ.P. 30……..……………………………………………..11

Fed.R.Civ.P. 37………………………………………………….....50

FRAP 39…………………………………………………………..58

**Other Authority**

6A WAPRAC Civil WPI 330.22.………………………………....…13-14

6A WAPRAC Civil WPI 330.24…..……………………………11, 12

6A WAPRAC Civil WPI 330 *et seq*…………………………………36

Civil Jury Instructions for 9th Cir., No. 10.6 (2017)……………………...36

Restatement (Second) of Agency § 267………………………………..30

## I.     INTRODUCTION

<u>Reply regarding Summary Judgment</u>: The uncontradicted facts in the record—i.e. Plaintiff's deposition and declarations, combined with audio recordings of sexual harassment and corroborating statements of a co-worker—establish a campaign of sexual harassment by Alfredo Perez, a manager who Defendant knew had sexually harassed women at Sealy before.

The trial court erroneously granted summary judgment to Defendant by resolving factual disputes and drawing factual inferences *in favor of Defendant*—primarily relating to Plaintiff's state of mind and knowledge, and the adequacy of Defendant's actions in investigating, monitoring, and addressing the consequences of Perez's conduct.

<u>Response to Discovery Dispute Cross-Appeal</u>: The trial court correctly exercised its wide discretion to manage discovery by denying Defendant's motion for sanctions. The record provides no support for the Defense Counsel-invented theory that Plaintiff was inviting sexual harassment; *nothing* in the record indicates the small amount of lost audio might have contained Plaintiff asking for it. As the trial court found, the lost recordings were not material and could only relate to something already clearly established in the record: Plaintiff was sexually harassed. The trial court also found Defendant had already included in its defense that it intended to terminate Perez *for sexually harassing Plaintiff*, had Perez not

**1**

resigned first. ER-21-22.

## II.    REPLY REGARDING DEFENDANT'S SUMMARY JUDGMENT[1]

Defendant creates numerous factual inferences in its favor—most

unsupported by the record—to conclude that Perez's conduct had little effect on

Plaintiff and no sexual harasser would start slowly, groom a victim, then pressure

that victim for sex after escalating the inappropriate conduct. But, like a chef

cooking a frog, once Defendant put Plaintiff in a pot of water and handed her over

to Perez (someone Defendant knew had sexually harassed in the past), Perez turned

up the heat slowly until it reached Plaintiff's boiling point.

### A.    Defendant's response relies on and resolves—in its own favor— numerous factual disputes and inferences.

Summary judgment should rarely be granted in sexual harassment and other

discrimination-based claims because such claims are usually predicated on motive,

innuendo, and context—matters that involve factual disputes and require a

factfinder to weigh competing inferences. *See, e.g., Cornwell v. Microsoft Corp.*,

192 Wn.2d 403, 410, 430 P.3d 229, 233 (2018); *Mikkelsen v. Public Utility District

No. 1*, 189 Wn.2d 516, 527, 404 P.3d 464, 470 (2017); *Sangster v. Albertson's,

Inc.*, 99 Wn.App. 156, 160, 991 P.2d 674, 677 (2000).

---

[1] Plaintiff continues to request this Court grant Plaintiff summary judgment on her *quid pro quo* and hostile work environment claims. Because Defendant did not respond to those requests in its appellate response, Plaintiff relies on its opening

Here, Defendant's response is dependent upon this Court improperly drawing and adopting numerous factual inferences in favor of Defendant to affirm summary judgment. *See Clarkson v. Alaska Airlines, Inc.*, 59 F.4th 424, 432 (9th Cir. 2023) (citations omitted). Defendant's most significant inferences and assumptions are addressed here:

> **1.** **Defendant draws inferences to dismiss nine weeks of a slowly-escalating sexual harassment campaign and claim there was no connection between the harassment and Plaintiff's work conditions.**

Anticipating the *Faragher-Ellerth* defense's inapplicability, Defendant seeks alternative summary judgment grounds on the hostile work environment claim, discounting or ignoring nine weeks of sexual innuendo, unwelcome touching, and abuses of power Perez engaged in to isolate Plaintiff, groom her, and escalate to sexually propositioning her. *See* Dkt. No. 25.1:37. To do so, Defendant improperly resolves factual disputes and draws inferences in its own favor, ignoring pro-Plaintiff facts and inferences in the record. *See Clarkson*, 59 F.4th at 432.

**a. Perez's inappropriate conduct over nine weeks was part of an unwelcome and repugnant campaign of sexual harassment.** Defendant needs to prove no reasonable jury could find sexual harassment in sexual innuendo and inappropriate behavior during a nine-week period where: (i) Perez bragged to

---

brief on those issues. *See* Dkt. No. 16.1:26-33, 41-49.

Plaintiff about how he was excited to get her alone, before and after sending everyone else in the department away, ER-46-47, 145-146; (ii) Perez assigned Plaintiff a walkie-talkie, then told her he liked watching her walk around with it, ER-146; (iii) Perez rubbed Plaintiff's shoulders and upper back, ER-64; (iv) Perez stroked Plaintiff's arm before telling her "I really want to make love to you," ER-84, 146; (v) Perez engaged in uncomfortably-close conversations with Plaintiff but maintained a normal distance with male subordinates, ER-76, 140; (vi) Perez would initiate uncharacteristically long conversations with Plaintiff on the pretense of work, only to turn them personal or sexual, ER-68; and, (vii) Perez told Plaintiff not to tell anyone—including management and *even her own husband*—what Perez said to and did with her, ER-36-37, 50-51, 75.

This behavior was building up to: Perez telling Plaintiff "I cannot wait to cum inside you and make you cum, too," ER-147; Perez giggling, talking about "tasting" Plaintiff, then pantomiming sexual positions he had planned for Plaintiff, how he would spread her legs on the hotel bed at the supervisor conference, ER-36, 75-76; Perez reiterating she should tell no one about what he told her, ER-75-76; and, Perez asking if he got her drunk at the conference, whether she would "lower her standards" and have sex with him, ER-36, 80.

At Plaintiff's deposition, Defendant repeatedly attempted to inoculate inappropriate conduct and language during those nine weeks by asking Plaintiff if

conduct was "overtly sexual." *See* ER-64, 68. But whether *individual* statements and conduct are *openly*, *definitely,* or *undoubtedly* sexual—all synonyms of "overtly"—is not dispositive. Defendant fails to explain why Plaintiff—*who was present for the tone and context of behavior Defendant argues was innocuous*—found the subtext and context "disturbing" and "creepy," resulting in her feeling "shocked and disgusted." ER-146.

A reasonable jury could find: Perez's "disturbing" and "creepy" conduct and language was part of a grooming-for-sex campaign; Perez intended to disguise his sexual intent through innuendo and dismissible-if-confronted claims; and, the touching, close-talking, and unsettling statements affected Plaintiff's work conditions. Perez's strategy had previously avoided consequences under Defendant's apathetic eye; six months before Perez managed Plaintiff, Defendant issued Perez a written warning with no consequences for calling women "babe" and "baby." In that investigation, Defendant ignored all the context surrounding the inappropriate language, including Perez's unwelcome and unnecessary physical touching and a *quid pro quo* demand of sex for better hours to a female subordinate. *See* Dkt. No. 16.1:22-26. Even now, Defendant defends and minimizes Perez's conduct tooth-and-nail, despite asserting intent to fire him based on Plaintiff's allegation (ER-20), and despite Defendant lacking enough faith in its

5

own assertions to call Perez to testify, likely because innocent people rarely resign when accused and without hearing any details of the accusation. *See* ER-87, 149.

A reasonable jury could determine this nine-week campaign of escalating sexual innuendo and isolating Plaintiff, leading to outright sexual propositions, was all connected, that Perez knew what he was doing. Perez's conduct is not analyzed as isolated incidents, as Defendant's account requires, but viewed as whether a reasonable jury could find that the conduct *overall and cumulatively* could affect Plaintiff's work conditions. *See Haubry v. Snow,* 106 Wn. App. 666, 676, 31 P.3d 1186, 1191 (2001). Furthermore, sexual harassment and a hostile work environment can change the terms and conditions of employment through specific changes in how the victim engages with her job or where the harassment "implicitly, but effectively, made [the victims'] **endurance of sexual intimidation a term or condition of their employment**." *See Glasgow v. Georgia-Pacific Corp.*, 103 Wn.2d 401, 405, 693 P.2d 708 (1985) (emphasis added).

Here, Plaintiff subjectively found, and a reasonable person could objectively find, Perez's *ongoing campaign* was unwelcome, repugnant, and materially affecting her ability to fully function at her job and with her mental health intact, having to endure Perez's inappropriate comments, unwelcome touching, demands not to talk to her husband, sexual propositions, and claims Perez would overcome her resistance by getting her drunk at a work conference. *See* Dkt. No. 20.1:11-19.

**6**

**b. Perez's comments and conduct were innocuous.** Defendant isolates each instance of inappropriate conduct and language from Perez and either (i) pitches an innocuous reason for the conduct or comments—despite not having called Perez to substantiate such hypotheticals, or (ii) where the conduct is too egregious, Defendant just ignores it. *See* Dkt. No. 26.1:24-39. Defendant's speculations create a new version of Perez who didn't harass Plaintiff, saying Perez was just "asking her about her interest in advancement, discussing potential promotion, letting only her use the walkie-talkie, advising her about the need for a supervisor to maintain some separation from those she supervises, deputizing her to deliver directives to her co-workers." Dkt. No. 25.1:50-51. Defendant asserts "most of what Plaintiff describes" are "favors and gifts," with nine weeks of sexually-charged grooming leading up to explicit offers of additional work favors for sex being irrelevant to Plaintiff's claims and, in Defendant's words, "not harassing acts at all." Dkt. No. 25.1:50-51; 44 (Defendant minimizes the above treatment to "a lengthy period in which she received favored treatment.")

But these are all Defendant's (completely speculating) inferences about Perez's motives, who Defendant didn't depose or take a statement from—leaving Plaintiff's account as undisputed fact. Should this Court view silence from Perez as a factual dispute (*and without knowing whether Perez would materially dispute Plaintiff's account*), summary judgment in favor of an employer is seldom

7

warranted in cases under the WLAD for this very reason, that the true motives of the employer and its agents will rarely be available except through a factfinder weighing competing inferences. *See, e.g., Cornwell*, 192 Wn.2d at 411, 430 P.3d at 233; *Sangster*, 99 Wn.App. at 160, 991 P.2d at 677.

Defendant *concedes* as inappropriate three to four instances of Perez verbally propositioning and sexually harassing Plaintiff, and one instance of Perez stroking Plaintiff's arm. *See* Dkt. No. 25.1:37-38. Then Defendant cites—after it ignores the connected, continuous nine-week harassment campaign—three 9th Circuit decisions to show Plaintiff's ordeal was not actionable as a matter of law. *See id.* These cases involved no campaign of sexual harassment, have fewer instances of objectionable conduct, and two cases involve coworkers rather than managers. *See Robello v. Mandalay Corp.*, 740 F.App'x 607 (9th Cir. 2018) (unpublished) (a single instance of touching); *Harris v. Sutton Motor Sales & RV Consignments Corp.*, 406 F.App'x 181 (9th Cir. 2010) (unpublished) (a co-worker used a racially-offensive pun and a supervisor said a racially-offensive word in explaining "his father's animus toward black people"); *Brooks v. City of San Mateo*, 229 F.3d 917 (9th Cir. 2000) (a coworker inappropriately touched the plaintiff twice within the same shift). The cases provide no parallel guidance here.

Ultimately, a reasonable jury could believe Plaintiff's factually-undisputed account of what happened—that Perez, a master-groomer—edged past the line of

sexualized speech and conduct slowly and progressively, pretending to care about Plaintiff's work while inserting inappropriate comments and touching, normalizing that conduct, preparing her for his sexual propositions once he felt she was isolated and reliant on him, and when her guard was down. Plaintiff hesitated to report him in the early stages because Defendant wouldn't have taken Perez's grooming behavior seriously if she reported it; she felt they would have viewed her as "hypersensitive" (ER-64), as Defendant does now. *See* Dkt. No. 25.1:51 & n.5.

Plaintiff argued in her opening brief why the record, as above, warrants summary judgment in her favor. *See* Dkt. No. 16.1:44-49. To the extent Defendant's refusal to acknowledge portions of the record unfavorable to it and Defendant's self-serving speculations on Perez's motives, who provided no account here, can create a factual dispute rather than a grant of summary judgment to Plaintiff, Defendant is not entitled to summary judgment. A reasonable jury could view this inappropriate and sexually-charged grooming campaign as nine weeks of a hostile work environment, building towards two *quid pro quo* offers of promotional opportunity for sex. *See Clarkson*, 59 F.4th at 432.

**c. Perez's conduct was not professionally justified.** Defendant dedicates a single-spaced, half-page footnote to claim that Perez isolating Plaintiff, swearing her to secrecy, and restricting her ability to go upstairs were all innocuous demands and reasonable in light of Perez trying to get her promoted. *See* Dkt. No. 25.1:51

**9**

n.5. For instance, Defendant claims, "Plaintiff understood Perez was telling her not to tell anyone about his plan to develop her for advancement" and this was work-related and innocuous. *Id.* But a reasonable jury viewing this in the totality of the circumstances could perceive Perez's demands for secrecy were not innocuous; Defendant never explains what possible innocent or work-related reason Perez had for telling Plaintiff to keep it all secret *from her husband*. *See* ER-81, 134.

Defendant relies on pieces of Plaintiff's deposition where she testified *at those times* she was unsure if she was overreacting because Perez claimed it was part of his secret strategy to get her promoted. *See* ER-64-65, 75. In other words, Perez was gas-lighting her—attempting to make her feel like, if she felt uncomfortable, it was due to her own past, not anything Perez was doing. That Perez might have been partially effective at various times in manipulating Plaintiff is not a defense to sexual harassment.

As stated above, Perez engaged in an escalating, nine-week campaign here. It's undisputed that Perez's motivation was sexual, as Defendant concedes sexual propositions—not good faith attempts by a manager to secure a promotion for a subordinate—is where all this led. *See* Dkt. No. 25.1:37-38. Perez was acting as a sexual harasser, not a good manager, throughout the period in question.

**d. Under Washington law, Perez was a "manager" acting with Defendant's authority.** Defendant's brief footnote argument that Perez was not a "manager" ignores state law and the record here. *See* Dkt. No. 25.1:58, n.6.

"Managers are those who have been given by the employer the authority and power to affect the hours, wages, and working conditions of the employer's workers." *Robel v. Roundup Corp.*, 148 Wn.2d 35, 48 n.5, 59 P.3d 611, 618 n. 5 (2002). Regardless of title, "[a] 'manager' is a person who has the authority and power to affect hours, wages, and working conditions." 6A WAPRAC WPI 330.24.

In fact, "the real question with respect to employer liability for a hostile work environment created by a supervisor is whether the supervisor was aided in creating the hostile work environment by the agency relation." *Henningsen v. Worldcom, Inc.*, 102 Wn. App. 828, 843, 9 P.3d 948, 957 (2000).

HR VP Drew Millar, acting as Defendant's binding Fed.R.Civ.P. 30(b)(6) deposition delegee and corporate representative, stated Perez had the power to modify Plaintiff's hours and conditions of employment, including the power to indirectly dictate her wage by controlling the number of hours he assigned her as an hourly worker. *See* ER-136-137. Defendant also conceded this fact in its Answer. *See* ER-177 (Defendant's Answer, admitting ER-181 (Amended Complaint): "¶¶ 2.26 Perez was plaintiff's 'manager' in the foundations dept." and

"¶ 2.27 When Perez was plaintiff's 'manager' in the foundations dept. he had authority and power to affect her hours, wages, and working conditions.")

Defendant, in short, handed Perez the keys to the kingdom, granting him authority to determine what Plaintiff did at work, when she did it, how long she did it, and by extension, how much she was paid, making him a manager as a matter of law. *See* ER-137. Furthermore, that managerial authority Defendant gave Perez was the only reason he was able to control Plaintiff's working conditions—and make a *quid pro quo* sex offer and create a hostile work environment she was not free to just leave. *See Henningsen*, 102 Wn. App. at 843.

Defendant allowing Perez to act as Plaintiff's employer in all meaningful ways (including setting Plaintiff's salary, hours, tasks, and working conditions) is particularly troubling here because Defendant was on notice from prior complaints against Perez of inappropriate language towards female subordinates and a *quid pro quo* offer of sex-for-better-hours, ER-119, 122-124, yet Defendant *still* gave Perez sweeping authority over Plaintiff and did not monitor him for sexual harassment in any appreciable way. *See infra*, Section II.A.3.b.

Under the undisputed record and by Defendant's own repeated admissions, Perez was Plaintiff's manager as a matter of law. *See* 6A WAPRAC WPI 330.24.

**e. Plaintiff found her work conditions unbearable from a sexually-harassing manager and under the after-effects of an indifferent employer.**

12

Defendant needs to prove no reasonable jury could believe that Plaintiff was *actually* affected by the conduct above. Plaintiff testified she was miserable from the harassment, cried uncontrollably, and ultimately quit her job due to the harassment and Defendant's indifference. *See* ER-80, 141.

Plaintiff's subjective feelings mirrored objective reality. Perez controlled what Plaintiff did at work, when she did it, how many hours she would be assigned, and what her pay would be (as an hourly worker). ER-137. Plaintiff was under the thumb of Perez and her work conditions and life were at the mercy of Perez's Defendant-granted-and-unmonitored authority. *See infra*, Sections II.A.1.d, II.A.3.b.

Plaintiff's work conditions are viewed cumulatively and in the context of the power dynamics of a manager-subordinate relationship. *See Adams v. Able Bldg. Supply, Inc.,* 114 Wn.App. 291, 296, 57 P.3d 280, 283 (2002) (analysis whether conduct "alter[s] the conditions of employment" is viewed under "the totality of the circumstances.")

Plaintiff worked under the anxiety of never knowing when Perez would pull her aside for a long, uncomfortable, and unwelcome talk that led to further inappropriate language and conduct. *See, e.g.,* ER-55. She lived under the implicit threat that Perez could make her work life very unpleasant if she pushed back too much or reported him. *See* 6A WAPRAC WPI Civil 330.22 (allowing satisfaction

of a *quid pro quo* claim under the WLAD where there is an "implicit" threat of a change in work conditions); *Thompson v. Berta Enterprises*, 72 Wn. App. 531, 537-538, 864 P.2d 983, 986-987 (1994) (recognizing strict liability for an employer stems from exercising "authority to affect terms and conditions of their employee's jobs").

Defendant ignores the nature of the manager-subordinate power dynamic and instead argues Plaintiff couldn't have actually been subjectively affected because Plaintiff testified she just wanted Perez to stop and would not have risked reporting him if he had stopped. *See* Dkt. No. 25.1:38. But, because Plaintiff was worried about Perez retaliating against her, ER-76, 90, 146-147, a reasonable jury could understand that Plaintiff was extremely affected by the sexual harassment—and ultimately reported it. That jury could also understand that, like most victims, Plaintiff's primary desire was to have her life back and the job she enjoyed prior to Perez. *See* ER-37. Defendant's speculation that Plaintiff wasn't *truly* affected by the sexual harassment—yet inexplicably reported it—is, at best, a factual dispute precluding summary judgment for Defendant. *See Clarkson*, 59 F.4th at 432.

**f. Plaintiff is not the villain here.** Defendant attempts to villainize the victim because Plaintiff texted to a friend that she could stand up against Perez after she had an audio recording and (incorrectly) believed Defendant's HR could not ignore that. *See* Dkt. No. 25.1:42 (citing Plaintiff's text: "I don't know who's

14

going to end up being our supervisor because Alfredo [Perez]'s one word away from being fucking fired or blackmailed lol hahaha.' SER-95, 107 ¶9.").

But that single text is not legally dispositive of whether she was harassed or affected by the harassment. A reasonable jury could understand that, after a nine-week harassment campaign where Plaintiff reasonably believed Defendant would not protect her against Perez, a victim—who now had an audio recording of the sexual harassment—might sound emboldened in a text because she finally didn't feel powerless against a sexual predator.

> **2.** **Defendant's attempt to undermine the reality and significance of an invitation to the supervisor's conference requires sweeping inferences drawn in Defendant's favor and contrary to Perez's assurances and Plaintiff's behavior.**

**a. Plaintiff reasonably believed the conference was a stepping stone to promotion.** Defendant must show no reasonable jury could find Plaintiff believed that her attending a conference only for supervisors would be a next step towards becoming a supervisor, *see* Dkt. No. 25.1:24-25, even when Perez reassured her it was, *see* ER-75. Defendant fails to explain, if Plaintiff knew all along that the conference wouldn't help her, why she would be willing to pay for her own hotel room to attend or, generally, why she would want to attend at all. *See* ER-75.

**b. At all material times, Plaintiff believed Perez's promises.** Defendant overstates the record to inaccurately assert that Plaintiff "understood" Perez's trip-to-promotion was "BS" by November 17, 2021. *See* Dkt. No. 25.1:26. Plaintiff

**15**

actually testified in her deposition that on November 17, when she made her first recording of Perez: "At this point I was a little – started to think it was all BS." ER-75.

First, she testified she "*started*" to have doubts about Perez. Second, her testimony continues that Perez reassured her at that time and emphasized that she shouldn't talk to anyone about it (including the individuals Perez claims he was going to convince to invite her). *See* ER-75. Defendant's argument that Plaintiff had an *unreasonable* belief that Perez was still working to get her an invitation—in light of Perez's assurances he was—is unsupported by the record, but at best for Defendant, a disputed inference reserved for a jury. *See Clarkson*, 59 F.4th at 432.

**c. At all material times, Plaintiff believed Perez could get her an invitation to the conference.** Taking all inferences in Defendant's favor, Defendant argues no reasonable jury could find Plaintiff believed Perez's assurances he could get her an invitation. Defendant infers this because Sealy Operations Manager Coatney (who didn't have frequent communications with Plaintiff) didn't expressly tell Plaintiff she *could* attend, so it would be unreasonable for Plaintiff to believe Perez's assurances that she might be able to. *See* Dkt. No. 25.1:27-28 n.2. Defendant is forced to make such a strained inference because Defendant previously wholly relied for summary judgment on Coatney's declaration that Coatney *did* tell Plaintiff she couldn't attend, without realizing that

**16**

alleged fact was already contradicted in Plaintiff's deposition. *Compare* ER-213 (Coatney Declaration) *with* ER-75 (Plaintiff stating no one other than Perez had ever talked to her about her attending the supervisor conference).[2]

Ultimately, Perez—Plaintiff's sole direct manager who claimed he had the ear of formal decision-makers—repeatedly told her he could secure her an invitation. *See* ER-36-37, 75-76, 79-80, 146-147. Defendant concedes Perez told Plaintiff he was going to "develop her for advancement" and explains away various inappropriate conduct as Perez just preparing her for promotion, Dkt. No. 25.1:51, n. 5, yet still claims no reasonable jury could confirm Plaintiff's belief that Perez was the person who would effectively get her a promotion, *see* Dkt. No. 25.1:26.

Defendant then chides Plaintiff for unreasonably believing Perez because "hourly workers" like Plaintiff had never been invited to the supervisor conference. *See* Dkt. No. 25.1:24. There is no evidence in the record Plaintiff knew hourly workers had never been invited; Defendant cites to the deposition of Sealy Operations Manager Coatney about *his* knowledge of who *he* had *previously* invited. *See* Dkt. No. 25.1:24 (*citing* SER-38-39). A reasonable jury could draw an

---

[2] Defendant's footnote argument that Plaintiff somehow waived the right to point to a conflict in the record is without merit. *See* Dkt. No. 25.1:28, n.2. The trial court erroneously relied on Coatney's declaration but ignored the contrary position in Plaintiff's deposition; both were in the record before the trial court.

inference in favor of Plaintiff—that an invitation to a supervisor conference meant the writing was on the wall for her promotion, *because* hourly workers normally weren't invited. On the Wednesday of Perez's last week, he told Plaintiff that Coatney and his boss "were just waiting on approval for (her) to be okay to go on the trip…." ER-74. Defendant's argument requires controverted inferences in its favor, which precludes summary judgment for Defendant on Plaintiff's *quid pro quo* claim. *See Clarkson*, 59 F.4th at 432.

> **3.  Defendant cannot avoid a jury resolving highly factual inquiries whether Defendant acted unreasonably when it failed to adequately hold Perez accountable for prior sexual harassment, failed to monitor Perez with Plaintiff, and did not acknowledge or condemn the harassment Plaintiff suffered from him.**

That Defendant had sexual harassment policies on paper or only ostensibly conducted an investigation is not sufficient to establish that Defendant acted reasonably or can invoke the *Faragher-Ellerth* defense. *Faragher v. Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

> [T]he basic question is not whether an investigation is either prompt or adequate. Rather, **the question is whether the remedial action by the employer is effective**. While the law does not require that investigation into sexual harassment complaints be perfect, **it does require that remedial action be "reasonably calculated to prevent further harassment."**

> *Perry v. Costco Wholesale, Inc.*, 123 Wn. App. 783, 794-795, 98 P.3d 1264, 1270 (2004) (emphases added).

18

Defendant's April 2021 wrist-slap warning to Perez, without consequences, followed by no meaningful monitoring of Perez after putting him in charge of other female employees, was unreasonable and did not satisfy Defendant's responsibility to prevent harassing behavior. *See Faragher*, 524 U.S. at 808. Equally and independently-sufficient to prevent Defendant from escaping liability, Defendant unreasonably failed to openly acknowledge and condemn the sexual harassment Plaintiff suffered. *See id.*; ER-149, 153-154 (Sealy refusing to validate Plaintiff's uncontroverted and corroborated complaints of sexual harassment); ER-161 (Richard Coley, Sealy's Plant Director, testifying he believed Plaintiff's claims were validated). The trial court erred in granting summary judgment because the reasonableness of Defendant's actions—and inaction—requires a factfinder for resolution. *See Clarkson*, 59 F.4th at 432.

**a. Defendant's prior investigation of Perez did not adequately address the claims against him.** Defendant cannot prove a reasonable jury would find the existence of its sexual harassment policy dispositive that Defendant acted reasonably, in light of evidence that Defendant favored Perez's general denial over specific, detailed accusations of a prior *quid pro quo* offer—with corroborating evidence of another witness observing the after-effects on the victim of the sex demand—and claims from multiple victims of other inappropriate touching and comments. *Compare* Dkt. No. 25.1:39-41 *with* Dkt. No. 16.1:22-26, 49-53. A jury

could disagree with Defendant that providing Perez a wrist-slap written warning—with no tangible consequences—on a lesser claim of calling women "babe" and "baby" in the face of more serious accusations from multiple accusers was unreasonable. *Compare* Dkt. No. 25.1:46 *with* Dkt. No. 16.1:22-26, 49-53.

      **b. Defendant failed to adequately monitor Perez.** A reasonable jury could also question whether Defendant's response to Perez's prior conduct was adequate where Defendant knew about Perez's propensities yet put him in charge of more women who had no idea and were given no warning of his sexually predatory nature. Inexplicably, Defendant also failed to actually monitor Perez *for sexual harassment. Compare* Dkt. No. 25.1:39-41 *with* Dkt. No. 16.1:53-55 (citing ER-213).

      The trial court erred by resolving this factual dispute that Defendant adequately monitored Perez by mistakenly relying on evidence Coatney monitored Perez *for his job performance*, unrelated to his treatment of women. *Compare* ER-19 *with* ER-213. Ultimately, whether Defendant's monitoring was adequate in light of Perez's prior conduct is a fact-intensive determination for a jury. *See Clarkson*, 59 F.4th at 432.

      **c. Defendant unreasonably refused to review all the evidence surrounding Plaintiff's complaint.** A reasonable jury could find HR's refusal to review *all of* its own surveillance footage to verify Plaintiff's claims, and refusing

to look at a photograph relating to and an audio recording of sexual harassment, was unreasonable. *See* ER-36-37, 153-154.

**d. Defendant refused to clearly condemn Perez's conduct.** A reasonable jury may find Defendant—despite claiming it would have fired Perez over Plaintiff's sexual harassment complaint if he hadn't resigned—was unreasonable in then concluding it was "unable to validate allegation" without further effort and despite Plaintiff's uncontested account, two corroborating witnesses, corroborating surveillance video, corroborating pictures and audio recordings, and the accused resigning immediately after learning Plaintiff reported him. *See* ER-148-149; 153-154. One of Plaintiff's coworkers was so disgusted by Defendant's failure and inaction that he quit as a result. *See* ER-141. Defendant did no further investigation after Perez resigned, yet with no contrary evidence, concluded Defendant was "unable to validate," *see* ER-149, 153-154, even though Defendant's own Plant Director would have validated Plaintiff's uncontested and corroborated claims, *see* ER-161.

A reasonable jury might conclude Defendant failed to fulfill its obligation to condemn the sexual harassment clearly and openly by refusing to vindicate Plaintiff's claim and to condemn the sexual harassment to the rest of its employees. *See Fuller v. City of Oakland, California*, 47 F.3d 1522, 1529 (9th Cir. 1995)

(*citing Ellison v. Brady*, 924 F.2d 872, 881 (9th Cir. 1991) (quoting 29 C.F.R. § 1604.11(f)) (setting forth the duty to condemn sexual harassment).

**e. Defendant made no real effort to address the effects of the harassment on Plaintiff.** A reasonable jury could view as unreasonable Defendant's failure to provide any meaningful aftercare to the victim to rectify the effects of the sexual harassment—ignoring her progress towards promotion and its loss, her isolation from her coworkers, and refusing to validate her claim. *See* ER-90, 149. That jury might find Defendant's walk-by apology weeks later for "what she had to go through" was not sufficient to address those after-effects. *See* Dkt. No. 25.1:63.

### 4. Defendant cannot secure summary judgment based upon inferences detached from reality.

Some crucial facts Defendant must prove *as a matter of law* to sustain summary judgment here defy credibility.

**a. Plaintiff did not view Perez's conduct as a joke.** Defendant's summary judgment hinges—as did the trial court's order—on pro-Defendant inferences from Plaintiff saying "yeah, I know" in response to Perez claiming he was "just kidding" about all his wildly inappropriate behavior—including graphic descriptions of unwanted sexual conduct with Plaintiff and that he wanted to "cum inside her" and "taste" her. *See* ER-12-13; Dkt. No. 25.1:27; ER-79-80. But a reasonable jury— contrary to the trial court's and Defendant's inferences—could understand Plaintiff was not actually agreeing that Perez's history of sexual harassment was him

"kidding" around, but rather Plaintiff saying that to attempt to defuse the situation enough to escape it.

Defendant's inference ignores that Plaintiff *reported* the very conduct Defendant claims she was okay with and thought was Perez "kidding." *Compare* Dkt. No. 25.1:27 *with* ER-79-80, 84-85. Defendant's inference also ignores that Plaintiff, shortly after and due to that encounter, spoke with a coworker and started crying "uncontrollably." ER-80.

Additionally, a reasonable jury would factor into its inference that subordinate-victims cannot freely confront their managers for fear of retaliation— making the inference that Plaintiff was just trying to escape the situation even more compelling. *See Henningsen*, 102 Wn.App. at 838-839. The trial court erred by drawing Defendant-favorable inferences—contrary to the facts and Plaintiff's own assessment—to conclude Plaintiff believed Perez was "just kidding" and was okay with his conduct. *See Clarkson*, 59 F.4th at 432.

**b. Perez's sexual advances were inextricably tied to Plaintiff's employment.** Defendant tests several strategies to claim that Perez trying to have sex with Plaintiff was in no way tied to Perez's position as her manager. Defendant argues—as it must to preserve summary judgment on the *quid pro quo* claim—that Perez's multiple sexual advances were in no way connected to Perez's invitation to a *work* conference *at which* Perez said they'd need to share a room and asked if she

23

would lower her standards at the conference (in reference to her having sex with him) if he got her drunk. *See* Dkt. No. 25.1:25-26. This factual gloss defies credibility; during the workday at Sealy and in the role of manager, Perez talked to Plaintiff about sexual acts and positions he would perform on her on the hotel bed intertwined with conversations about getting her an invitation *to that very same conference* where they would share a hotel room. *See* ER-75-76, 146-147.

Furthermore, Defendant would need to show, as a matter of law, that Plaintiff's response about having standards and Perez wanting to get her drunk to lower them was *not* about Perez getting her drunk to have sex with her at the conference. *See* Dkt. No. 25.1:27, n.1. Defendant views this as "an offer of exchanging alcohol for sex." *Id.* There was no history of Plaintiff trying to obtain alcohol from Perez or Perez offering to supply Plaintiff with alcohol. In short, there is no record to indicate Perez's buying Plaintiff alcohol was a commodity here to barter for sex; it was always in the context of work and trying to get a supervisor conference invitation for Plaintiff for promotion. *See* ER-80.

Defendant further argues the offer wasn't related to the business trip even though Perez was suggesting they'd be alone in his hotel room *for the conference* after drinking. *See* Dkt. No. 25.1:27. Plaintiff believed that Perez's comments were sexual in nature and tied to her attending the conference, and indeed Perez insisted Plaintiff could not just get her own room to attend. *See* ER-74-75. But Defendant

needs, as a matter of law, for Plaintiff's beliefs to be unreasonable based upon the record—which is almost entirely Plaintiff's own deposition and declarations, because Defendant did not obtain a statement from Perez.

A reasonable jury could infer that Perez inviting Plaintiff to a supervisor conference, refusing to let her get her own room, talking about having sex with her in a shared hotel room at the conference, and talking about getting her drunk so she would, tied Perez's invitation to a demand for sex. *See Clarkson*, 59 F.4th at 432.

**c. Plaintiff shared the knowledge of others at Defendant's facility that Defendant did not protect victims of sexual harassment.** Defendant asserts Plaintiff was unreasonably skeptical of Defendant protecting sexual harassment victims. *See* Dkt. No. 25.1:32-37. But a reasonable jury could recognize that workers talk about their employers and how they operate, and Plaintiff was exposed to the talk and culture which was created through knowledge of Sealy's past indifference; its pre-determined, pro-harasser/management investigations; and, its habit of leaving the victim under the authority of the very person she reported. *See* Dkt. No. 16.1:22-26.

Plaintiff's same skepticism was shared by other female employees at Sealy. One female hourly worker, Trina, did not think "anything would happen" to Perez if she reported. Another, Celerina, worried she might lose her job if she reported. Yet another, Genny, was afraid to go to HR because no one would believe her. ER-

119-120. These women—well-acquainted with how Defendant operated in practice—shared Plaintiff's belief that reporting would do nothing but keep them under the authority of a harasser who then had reason to retaliate for their report. *See* ER-76. And they were correct; Defendant did nothing to protect Celerina from Perez retaliating after she reported a *quid pro quo* offer, even after she subsequently reported that retaliation. *See* ER-122, 124 (Perez began using an "aggressive tone" with Celerina—and no one else—and made her switch jobs).

Defendant ignores its history and the effect on the employee culture at Sealy. But a reasonable jury could find that numerous female hourly workers having the same concerns about Defendant's failure to protect victims would indicate collective knowledge of Sealy's culture of indifference. The question here is whether anything in the record could support a reasonable jury finding Plaintiff's lack of faith in reporting to Sealy reasonable. Defendant's litany of failings to use its sexual harassment protocol to *actually* protect victims is the most natural explanation of how so many female Sealy employees had the same view of Sealy *and relied on that belief in how they engaged with Sealy*.

Even Sealy's HR operated from that understanding. When HR asked Plaintiff what she wanted them to do about her complaint, Plaintiff said she wanted Perez fired. ER-85, 148. Without further investigation or speaking to anyone else,

*but based on how Sealy operated*, HR responded that was "not going to happen." *Id*.

Defendant has since claimed it would have fired Perez if he hadn't resigned; yet at the time this all occurred, HR concluded it was "unable to validate" Plaintiff's uncontested allegations, made no further investigation, and did nothing to publicly denounce Perez's conduct. *See* ER-149, 153-154. *Sealy's own Plant Director* testified he believed the claims were valid, but believing victims isn't how Defendant's HR operated. *See* ER-161. A jury could find that unreasonable.

Plaintiff was *specifically* concerned that HR would dismiss her claims as being oversensitive. *See* ER-64-65. Even now, Defendant dismisses Plaintiff as being oversensitive—about a nine-week campaign of inappropriate touching, isolation, and sexual innuendos, leading to Perez explicitly sexually propositioning Plaintiff—because Perez was just innocently supporting a subordinate for promotion. *See* Dkt. No. 25.1:51 n.5. Defendant resolves all factual inferences in its favor to explain away Perez's early harassment and inappropriate behavior. For instance, according to Defendant, Perez was appropriately isolating Plaintiff from coworkers to prepare her for a promotion that Defendant *also* argues now Perez had no ability to get her. *See id*. Defendant fails to explain how Perez repeatedly telling Plaintiff not to tell *her husband* anything Perez told her was also appropriate and professionally-motivated. *Compare id. with* ER-36-37, 50, 134.

27

In sum, a reasonable jury could view find Plaintiff had a reasonable belief from Sealy's work culture and employee-discussed knowledge that she needed more than accusations for Defendant to believe and protect her. Plaintiff's specific concerns (e.g. being retaliated against because Defendant wouldn't remove her from Perez's management after her report, ER-76, 90) were otherwise *inexplicably* accurate to how Defendant previously handled victims and how Defendant has characterized the harassment throughout. The record establishes Plaintiff's beliefs and supports the reasonableness of those beliefs. *See* ER-76, 90, 126-127.

A jury is in the best position to hear Plaintiff's account, draw its own inferences, and determine whether Plaintiff's beliefs and hesitation were warranted. *See Clarkson*, 59 F.4th at 432.

### 5. Summary: Factual conflicts coupled with Defendant's self-serving inferences preclude summary judgment in Defendant's favor.

Discrimination cases, including sexual harassment, deal with the motives of the participants, and words and actions viewed in the context of the totality of the circumstances. *See, e.g., Cornwell*, 192 Wn.2d at 411, 430 P.3d at 233; *Sangster*, 99 Wn.App. at 160, 991 P.2d at 677. If we allow Defendant's unfounded inferences, a factfinder is necessary to evaluate the context, considering: Perez's words, promises, and conduct over the entire period; Plaintiff's position and whether her beliefs and actions were reasonable; and, Defendant putting Perez—a

known sexual harasser—in charge of Plaintiff without warning or monitoring for signs of sexual harassment, with no follow up condemning the harassment.

The trial court erred in resolving numerous factual disputes and drawing key inferences in favor of Defendant to grant summary judgment here. *See* ER-13-21. Defendant now asks *this* Court to play the factfinder—accepting Defendant's factual assumptions and extrapolations—without Plaintiff having the chance to tell her story. The dismissal of Plaintiff's *quid pro quo* and hostile work environment claims are barred due to the existence of material factual disputes. *See Clarkson*, 59 F.4th at 432.

### B. Perez was a manager with actual and apparent authority sufficient to support a *quid pro quo* claim.

Perez had actual authority over Plaintiff's working conditions, hours, and salary. *See supra* Section II.A.1.d. Perez also had apparent authority over Plaintiff as her sole, direct manager and the only person evaluating her work and her at work. *See* ER-137.

Defendant argues Perez didn't have the requisite authority to offer the *quid pro quo* sex-for-invitation because Perez needed someone else's approval for Plaintiff to attend the supervisor conference and Plaintiff knew that. *See* Dkt. No. 25.1:30. That argument is not dispositive and is factually disputed. Perez's entire gambit was he had the ears of his superiors who *could* get Plaintiff promoted and, by Perez's good graces, Perez would make it happen for Plaintiff. *See* ER-51, 74,

145-147. In practice, Perez had actual authority over promotion as the sole direct observer and knowledgeable evaluator of Plaintiff's work. *See* ER-89.

But even if Defendant denies this now—claiming Perez's bosses did not listen to Perez—*Plaintiff reasonably didn't know that*. Perez *repeatedly* conveyed to Plaintiff that he could get her promoted, that he was well-regarded as a manager who fixed slagging departments, and Defendant would listen to him. *See* ER-46, 49, 51, 53, 74-75, 146. Defendant placed Perez in charge of Plaintiff, gave him free reign, and did not warn Plaintiff of Perez's sexual harassment history. *See* ER-89, 149. There is no evidence in the record that Defendant actually monitored Perez's conduct *in relation to sexual harassment* in his new position in any appreciable or meaningful way. *See* ER-76. And Plaintiff suffered the results of that obvious oversight. Ultimately, Perez's speech and Defendant's actions led Plaintiff—over a nine-week period—to reasonably believe (and rely) that Perez could secure her a promotion and invitation to the supervisor conference, establishing Perez's apparent authority. *See* ER-45-46, 49, 51, 53, 74-75, 146; *DLS v. Maybin*, 130 Wn. App. 94, 121 P.3d 1210, 1213 (2005) (*citing* Restatement, (Second) of Agency § 267 (1957)).

Defendant argues that, because Plaintiff ultimately realized Perez was misleading and manipulating her, she never believed Perez. *See* Dkt. No. 25.1:26. That is a non-sequitur; her conduct and the record demonstrates that she *did*

believe Perez was putting her in line for a promotion, that he was working with his bosses on that, reasonably based on his representations. *See* ER-45-46, 49, 51, 53, 74-75, 146. She only began to doubt Perez during his last week, when she broke down in tears and disclosed to her co-worker Arellano-Zanabria how Perez had isolated her from her peers. ER-80, 140. The fact that, at some point, Plaintiff became skeptical—and ultimately reported Perez once she thought Defendant would have to believe her when she had corroborating recordings—does not rewrite the history of nine weeks of Perez's grooming leading up to a *quid pro quo* offer.

Defendant's unfounded interpretation of the record—that Plaintiff knew all along Perez was lying but still alienated her co-workers, isolated herself, and tolerated Perez's unwelcome and unprofessional conduct—are inferences Defendant could argue to a jury. But a reasonable factfinder could dismiss those as inconsistent with the rest of the timeline. A factual dispute on what Plaintiff knew, what she relied upon, and when, precludes resolution by summary judgment here; this dive into state of mind and motivation is *why* summary judgment is rarely granted in favor of the employer in these types of cases. *See, e.g., Cornwell*, 192 Wn.2d at 410, 430 P.3d at 233; *Sangster*, 99 Wn.App. at 160, 991 P.2d at 677.

Ultimately, a reasonable jury could conclude Plaintiff reasonably believed that her sole direct manager—who was the only direct observer of her work—

could secure her a promotion and favorable work benefits, where he assured her he could and where he had awarded her favorable work benefits in the past.

### C. Defendant's claim that apparent authority and the threat of retaliation aren't properly before this Court is without merit.

Defendant argues this Court lacks the ability to consider apparent authority and the implicit threat of retaliation that a subordinate endures from contradicting or denying their manager, because Plaintiff did not raise those issues at the trial level. *See* Dkt. No. 25.1:28-30. But Plaintiff did.

In her motion for summary judgment, Plaintiff cited *Dewater v. State* for the proposition that actual *or apparent* authority was sufficient for a *quid pro quo* claim. *See* 921 P. 2d 1059, 1062 (Wash. 1996) ("An employer is strictly liable for quid pro quo harassment perpetrated by supervisory personnel who have **actual or apparent authority** to make employment decisions on behalf of the employer.") (emphasis added). Plaintiff then discussed how Perez and Defendant presented his authority to Perez's subordinates:

> "**From the perspective of Plaintiff and her coworkers**, Perez was the voice of Sealy. He controlled when they worked, what they did, how they did it, and—because he determined their hours worked—their pay. As their manager, **he also evaluated work performance of those he supervised and who would be appropriate for promotion**."

FER-46 (emphases added).

Plaintiff continued, discussing Perez's promises on what he could make happen for her, and further highlighted the common-sense concept that crossing

your boss has a threat of consequences:

> Furthermore, Perez controlled Plaintiff's working conditions—by improving them directly through granting additional hours and more favorable tasks to perform, **by promising further promotions tied to staying with him in a hotel**, and **through the implicit threat that her position was contingent upon his favor—***because of* the agency that Defendant granted him. *See Henningsen v. Worldcom, Inc.*, 9 P.3d 948, 955 (Wash. Ct. App. 2000) (addressing a "supervisor" who was acting with managerial power and imposing vicarious liability to the employer through agency principles: "[w]hen a supervisor makes a tangible employment decision [based on discrimination], there is assurance the injury could not have been inflicted absent the agency relation." (Citation omitted)) Perez was only empowered, and Plaintiff was only put in the position of victimhood, because Defendant allowed Perez to wield such significant, job-altering power over Plaintiff and others. *See Henningsen*, 9 P.3d at 957 ("[T]he real question with respect to employer liability for a hostile work environment created by a supervisor is whether the supervisor was aided in creating the hostile work environment by the agency relation.")

FER-47 (emphasis added).

Similarly:

> **Perez had already established over weeks that (a) Plaintiff's path to promotion depended on Perez, and (b) the next step in her ascension was attending a work trip for supervisors. Since Plaintiff was not a supervisor yet, it was by her connection with Perez alone that would allow her to attend regardless.**

FER-49 (emphasis added).

Both the law and facts for apparent authority and the threat of retaliation were briefed before the trial court, as above. That the trial court rejected the arguments *sub silentio* does not preclude Plaintiff from arguing them on appeal. Furthermore, the necessary facts are in the record—as they were when Plaintiff

first briefed the issues before the trial court—and Defendant was not hindered in making its argument in response. *See* Dkt. No. 25.1:28-30.

> **D.** **The conflicting history of decisions of the Washington Court of Appeals weighs in favor of certifying the question or denying adoption here of the *Faragher-Ellerth* defense for Washington state law.**

Defendant argues that three court decisions (two in 2004 and one in 2019) since *Sangster* was decided in 2000 justify Defendant's conclusion: "the Washington Court of Appeals has repeatedly held for more than twenty years" that the federal *Faragher-Ellerth* defense applies to the WLAD. *See* Dkt. No. 25.1:54. Yet, since *Sangster* and during Defendant's same twenty-year period, three Washington Court of Appeals' decisions held the *Faragher-Ellerth* defense *did not* apply to the WLAD. *See* Dkt. No. 16.1:38-39 (*citing Storey-Howe v. Okanogan Cty.*, 188 Wn. App. 1065 (2015) (unpublished); *Davis v. Fred's Appliance, Inc.*, 171 Wn. App. 348, 287 P.3d 51 (2012); *Campbell v. State,* 129 Wn. App. 10, 118 P.3d 888 (2005)).

The tiebreaker to this three-on-three is the Washington Supreme Court. In *Robel v. Roundup*, the Court did *not* apply the *Faragher-Ellerth* defense, despite it being applicable to the facts, potentially dispositive in the case (if it had been applied), and briefed on appeal. *See* 148 Wn.2d 35, 59 P.3d 611 (2002); Dkt. No. 16.1:36 n.2. Defendant attempts to discount the Washington Supreme Court's decision by saying *Faragher-Ellerth* was a "fleeting reference" in the briefing,

34

implying the Washington Supreme Court (a) still wasn't aware of the *Faragher-Ellerth* defense or (b) didn't bother considering a defense that, if the Court decided it applied to the WLAD, would have either been dispositive or warranted a remand. *See* Dkt. No. 25.1:56.

But if we consider what each court was aware of, none of Defendant's cited Washington Court of Appeals cases acknowledge, analyze, or even mention *Robel*. *See Calcote v. City of Seattle*, 7 Wn.App. 2d 1019 (2019) (unpublished); *Barker v. W.A. Botting*, 121 Wn.App. 1030 (2004); *Majors v. Charles Loomis, Inc.*, 120 Wn.App. 1066 (2004) (unpublished).

In contrast, *Storey-Howe* rejected *Sangster*'s application of the *Faragher-Ellerth* defense, recognizing that the Washington Supreme Court's decision in *Glasgow v. Georgia-Pac. Corp.*, 103 Wn.2d 401 693 P.2d 708 (1985)—which does not include a *Faragher-Ellerth*-style defense for the WLAD—was binding unless the Washington Supreme Court overturned it. *See Storey-Howe*, 188 Wn. App. 1065. And the Washington Supreme Court, despite opportunity, hasn't. *See Robel,* 148 Wn.2d at 47, 59 P.3d at 616.

Also, unlike the cases cited by *Defendant,* the *Davis* and *Campbell* courts were well-aware of *Robel*—citing it on other legal issues—when those courts did not apply the *Faragher-Ellerth* defense to the WALD. *See Davis*, 171 Wn. App. at 365-366, 373-374, 287 P.3d at 60-64 (citing *Robel* for the accompanying

defamation claims); *Campbell,* 129 Wn. App. at 22, 118 P.3d at 893 (citing *Robel* to define an adverse employment action).

Tellingly, despite Defendant claiming a more-than-twenty-year history of *Faragher-Ellerth* applying to the WLAD, there is no pattern jury instruction in Washington state for applying the *Faragher-Ellerth* defense. *Compare* 6A WAPRAC WPI 330 *et seq. with* Civil Jury Instructions for 9th Cir., No. 10.6 (2017).

Ultimately, although Title VII decisions can inform interpretations of the WLAD, the Washington Supreme Court has not hesitated to depart from Title VII jurisprudence based upon statutory differences and legislative intent on major issues under the more-broadly-protective and victim-favoring WLAD. *See Blackburn v. State*, 186 Wn.2d 250, 258, 375 P.3d 1076, 1080 (2016) (recognizing that Title VII's role as a "source of guidance" for the WLAD ends where Title VII jurisprudence fails to "best further the purposes and mandates of" the WLAD); *Martini v. Boeing Co.*, 137 Wn.2d 357, 372-73, 971 P.2d 45, 53 (1999) (recognizing the WLAD is broader in scope than Title VII and liberally construed in protecting victims).

Plaintiff requests this Court refrain from making a drastic change to Washington state law and instead, as *Storey-Howe* did, recognize that—unless the Washington Supreme Court decides to adopt the *Faragher-Ellerth* defense, for

which there are numerous statutory, legislative policy, and practical reasons why it wouldn't (*see* Dkt. No. 5.1; 16.1:35-41)—the *Faragher-Ellerth* defense does not apply to the WLAD. Applying the federal defense to state law would reduce the liability of an employer and force an already-vulnerable sexual harassment victim to know when to report her manager while under fear of retaliation, and to expertly navigate a corporate grievance procedure—with her livelihood on the line—armed with a layperson's understanding of corporate procedure and corresponding law. *See Robel,* 148 Wn.2d at 47, 59 P.3d at 616; *Storey-Howe*, 188 Wn. App. at 1071.

Out of respect for the supremacy of the Washington Supreme Court in state law matters, and in light of the substantial effect the *Faragher-Ellerth* defense would have on the WLAD were it applied here, Plaintiff has asked this Court to certify this matter to the Washington Supreme Court if this Court were inclined to apply the federal defense in the face of *Robel*. *See* Dkt. No. 5.1. The trial court here did not certify this issue *sua sponte*, erroneously concluding it was "bound by *Sangster* in any event," despite the presence of *Robel* and Washington Court of Appeals cases that acknowledged *Robel* and refused to apply the defense. ER-17.

### E.    Conclusion for Reply relating to Defendant's Summary Judgment

The trial court erred by resolving factual disputes and drawing inferences in favor of Defendant to grant Defendant summary judgment. *See Clarkson*, 59 F.4th at 432. The trial court further erred by injecting the *Faragher-Ellerth* defense into

the WLAD, erroneously concluding it was "bound by *Sangster*" despite a contrary decision by the Washington Supreme Court and various Washington Court of Appeals decisions. *See* ER-17-18.

Plaintiff requests this Court reverse the summary judgment granted in favor of Defendant. As briefed in previous filings, Plaintiff further requests this Court to reverse the denial of her own summary judgment motion and, if this Court were inclined to change the scope of the WLAD, certify the question concerning the applicability of the *Faragher-Ellerth* defense to the WLAD. Dkt. Nos. 5.1; 16.1.

## III.   RESPONSE TO DISCOVERY DISPUTE CROSS-APPEAL

### A.   Standard of Review for Sanctions

Under the applicable abuse of discretion standard, this Court "will not reverse absent a definite and firm conviction that the district court made a clear error of judgment," as the trial court was best equipped to assess the circumstances of discovery. *Halaco Engineering Co. v. Costle*, 843 F.2d 376, 379 (9th Cir. 1988) (citations omitted). "The question is not whether this court would have, as an original matter, imposed the sanctions chosen by the trial court, but whether the trial court exceeded the limits of its discretion." *Id.* For any *factual findings* of the district court relating to the motion for sanctions, this Court applies a *clearly erroneous standard*. *Id.*

**B.**      **From mutually-imperfect discovery, Defendant seeks to avoid the merits of the case based upon Defense Counsel's unfounded and factually-contradicted speculation.**

Discovery in this case involved instances by both parties of requested evidence being lost or destroyed.

Defendant lost or destroyed surveillance videos of at least three instances of sexual harassment, including an approximately 40-minute encounter when Perez close-talked Plaintiff and said he wanted to "cum inside" her and "taste" her, ER-74-76; a shorter encounter on November 18th when Perez close-talked Plaintiff and asked her if she would "lower her standards" if he got her drunk, ER-79-80; and, an incident where Perez caressed Plaintiff's arm in a "creepy and disturbing way," shortly before saying "I really want to make love to you." ER-146. Defendant also lost or destroyed the original, handwritten HR interview notes. ER-34, 98. Defendant confirmed HR retaining the surveillance videos and the original HR interview notes was HR best practices (ER-97-100), but couldn't confirm when the videos and notes were destroyed (including before or after receiving a hold notice, *see* FER-28 (notice for preservation)) or why that evidence was destroyed, despite the videos and notes being material to the sexual harassment Plaintiff reported. Plaintiff's response to Defendant's shortcomings was to move on, avoid delay, and focus on the merits of the case.

In contrast, Defendant's response to Plaintiff losing a piece of a very low-sound-quality audio recording, that was accidentally created, for which there is no evidence it contained anything but a discussion about work between Perez and Plaintiff—was for Defense Counsel to invent a theory that Plaintiff may have *wanted and invited* the sexual harassment, despite (1) there being nothing in the record to *even indicate* that; (2) Plaintiff showing it was unwelcome by reporting it, ER-84; (3) Perez resigning two days after Plaintiff reported him, without knowing what she reported, ER-34-35, 40-41; (4) Defendant asserting it was going to fire Perez because of his conduct towards Plaintiff, ER-7, 22; and, (5) no denial from Perez, ER-153-154.

Defendant had made no efforts to substantiate Defense Counsel's speculative theory at any time during discovery—and has demonstrated no interest in seeking a statement from Perez, the only person other than Plaintiff privy to the sexual harassment, the only other person who could have substantiated Defense Counsel's she-participated-in-being-sexually-harassed theory. Furthermore, the best evidence of Plaintiff's reactions to Perez's sexual harassment would not be the audio recordings Plaintiff lost, *but the multiple surveillance video recordings Defendant lost or destroyed*, which would have shown body language, length of conversation, physical proximity, Perez laughing at Plaintiff's rejections, and Plaintiff's disgusted demeanor. *See* ER-34, 74-76, 79-80, 84-85, 97-100, 148-149.

Defendant was not prejudiced here; if there had been any basis at all for Defendant's victim-blaming, Defendant was more prejudiced by its failure to obtain a statement from Perez and failure to retain the surveillance videos of the sexual harassment.

In addition to a lost portion of an audio recording, the other half of Defendant's *original* motion for sanctions before the trial court was for Plaintiff allegedly-nefariously deleting texts. This basis was abandoned because none of the texts had been deleted; they had been in Defendant's possession for two months, but Defendant's discovery provider overlooked them. *See* FER-2-4, 19, 55-58.

In its discretion in managing discovery, the trial court correctly held any loss of a portion of the recording was immaterial to the relevant defense here—that Defendant was not liable for Perez's actions. The trial court found "there is no evidence and no real claim that [Perez] did not harass [Plaintiff] Elward." ER-21-22.

Defendant has failed to point to any actual evidence to support Defense Counsel's unfounded theory—which the trial court soundly rejected. *See id.* Defense Counsel's speculation that a few missing minutes could be a smoking gun—that would contradict not only the rest of the factual record, but every action of Plaintiff in responding to Perez's offensive, unwelcome conduct (and the

corroborating account of one of her coworkers)—is without merit and, particularly on an abuse of discretion standard, does not support reversal.

Ultimately, the risk of prejudice must be actual prejudice, not "tenuous" connections and "highly speculative" claims. *E.g. Livingston v. Isuzu Motors, Ltd.*, 910 F.Supp. 1473, 1492 (D. Montana 1995). Here, Defendant doesn't have a single witness implying Plaintiff was inviting or encouraging Perez's sexual harassment; Defense Counsel's theory for prejudice is not just "highly" but *entirely* speculative.

## C. Discovery Timeline for Defendant's Cross-Appeal

The following is the timeline for Defendant's spoliation allegations:

11/15/2021: After weeks of inappropriate comments and casual touching, Perez caressed Plaintiff's arm and told her he wanted to make love to her. ER-146.

11/16/2021: Plaintiff downloaded an app on her cell phone that would allow her to record audio by quickly hitting the volume button. ER-147; FER-12-13. Plaintiff did so to obtain a recording of escalating sexual harassment, believing Defendant would otherwise ignore her claims. *Id.*

Plaintiff made two intentional recordings of Perez, on 11/17 and 11/18, as below, as well as several unintentional recordings initiated due to the "hair-trigger" activation of the cell phone recording app—which used the phone's external volume switch to start a recording. *See* FER-12-13.

11/17/2021: Plaintiff talked to Perez for about 40-45 minutes on the work floor about work and assignments, interspersed with Perez's sexual statements. ER-75-77, 147; FER-14. After he told her how he would position her legs on the bed, she recorded approximately the last 7.5 minutes of their conversation, including Perez telling her "I cannot wait to cum inside you and make you cum, too." ER-147; FER-12, 14. This audio recording—which plays continuously over five files—is available to this Court at FER-6-7.

11/18/2021: Plaintiff again recorded Perez, for 5 minutes and 23 seconds. ER-147. He was more reserved in this recording and apologized for his prior statements. *Id.* Plaintiff suspected Perez was suspicious that she might be recording him. *Id.*

11/17-18/2021: Plaintiff made several inadvertent recordings due to the recording app's "hair trigger" to start recording. FER-12-13. These recordings, which Plaintiff produced to Defendant, had muffled talking and background noise. FER-13.

11/19/2021: Plaintiff reported the sexual harassment to HR and repeatedly asked HR to listen to the recording of Perez sexually harassing her, but HR refused. ER-77-78, 84.

11/21/2021: After Perez resigned, Plaintiff deleted the app, which she only had to record Perez's sexual harassment. FER-13.

43

12/15/2021: Plaintiff created a 63-second excerpt from the 7.5-minute, 11/17/2021 recording, which included Perez saying, "I cannot wait to cum inside you and make you cum, too," to allow co-worker Mario Arellano-Zanabria to listen to it. FER-15. Plaintiff sought his moral support, still struggling with HR's refusal to listen to the recording, despite it being definitive proof in her mind of Perez's sexual harassment. *Id.*

2/7/2022: The same day Sealy's in-house counsel requested preservation of all evidence, Plaintiff's counsel provided reciprocal notice to Defendant to retain all materials relating to Plaintiff, Perez, and any claims of sexual harassment. FER-14. That same day, Plaintiff's counsel instructed Plaintiff to preserve all materials relating to the litigation. FER-11, 27-28.

2/10/2022 (on or about): Plaintiff attempted to send the 11/17/2021, 7.5-minute audio recording to her attorney via email. FER-14. When she realized it was too big to send to counsel, Plaintiff split the recording into five segments and successfully sent each individually. FER-6-7, 14 (filing of flash drive). *The five segments played back-to-back constitute the entire audio recording*: the background music and sounds are continuous across the segments. FER-14. The fifth and final segment includes Perez telling Plaintiff, "I cannot wait to cum inside you and make you cum, too." *Id.* The only loss from splitting the longer recording

44

into five segments was the file names—which contained the date and time of the recording—but there is no material dispute about that date and time.

7/5/2022: A month prior to filing litigation, Plaintiff upgraded her cell phone. FER-16-17. Plaintiff and her husband took the phone to a T-Mobile store. FER-17. The T-Mobile employee assured Plaintiff's husband that he could transfer *everything* to a new cell phone, with no loss of data. *Id*. Based upon that assurance, Plaintiff's husband approved the transfer. Neither Plaintiff's husband nor Plaintiff—who use cell phones but do not have detailed knowledge or training of data storage processes—had any reason to believe that all data had not been transferred, as they relied on the assurances of the T-Mobile employee. *See id*.

8/12/2022: Plaintiff filed and served a WLAD complaint in state court. ER-190.

9/1/2022: Defendant removed the case to federal court. *See* ER-189-191.

5/3/2023: Defendant made a copy of all the data on Plaintiff's cell phone. FER-19.

6/20/2023 (shortly prior to): Plaintiff provided Defendant a 35-second recording titled "Alfredo.wav" ("Alfredo.wav Recording"). This recording was already in Defendant's possession in its 5/3/2023 copy of Plaintiff's cell phone memory. *See* FER-19.

The Alfredo.wav Recording is the basis for Defendant seeking sanctions on appeal. *See* Dkt. No. 26.1:17 ("One belatedly-produced 35-second snippet contained metadata revealing it had originally been part of a 49-minute 20-second recording titled "Alfredo." SER-50-51 ¶¶23-24.").

Defendant asserts metadata shows the Alfredo.wav Recording was originally 49 minutes and 20 seconds long. *See* Dkt. No. 25.1:17; SER-71. Assuming *arguendo* Defendant's metadata is accurate (the trial court made no specific findings on this fact, *see* ER-21-22), as far as Plaintiff is aware, only the 35-second portion still exists. *See* FER-13. Plaintiff had no specific recollection—a year and a half after the recording was made—of making the recording, editing a longer clip, or the circumstances of that specific conversation. FER-13. Plaintiff believes it was originally recorded unintentionally. *Id.* The Alfredo.wav Recording has extremely low audio quality with speech heavily muffled by loud machine noises and background music. *See* FER-6-7, 13. Defendant did not enter into the record any transcription of the 35 seconds of garbled speech and Plaintiff's counsel could not distinguish more than a few words, and nothing "sexual." *See* FER-6-7 (Exhibit 6 recording).

But in response to Defendant's request, after the 5/30/2023 discovery cut-off, Plaintiff allowed Defendant a third, expanded search of Plaintiff's electronically stored information ("ESI") to explore Defense Counsel's new,

unfounded, Plaintiff-invited-harassment, conspiracy theory. FER-9. Plaintiff

consented to ArcherHall expanding its search to include voice recordings. *Id*.

Plaintiff also offered Defendant a second deposition of Plaintiff, which Defendant

declined. *Id*.

If Plaintiff had maliciously intended to destroy evidence, she would have

never produced documents to Defendant after the discovery cutoff. *See* FER-9, 55.

Instead, when she found something possibly relevant, she promptly divulged and

provided. FER-3-5.

7/18/2023 (on or about): Defendant discovered that it was in possession—

since 5/3/2023—of the text messages Defendant previously claimed Plaintiff

intentionally deleted to destroy evidence, a basis for Defendant's motion for

sanctions. *See* FER-4-5. Defendant's ESI forensic discovery provider, ArcherHall,

had previously failed to search the location on the phone's storage where the text

app stored its messages. *Id.*; FER-57.

### D. The trial court's findings of fact, supporting that sexual harassment occurred, were not clearly erroneous.

The trial court found that Perez sexually harassed Plaintiff:

Elward testified that Perez harassed her, Sealy knew he had a prior similar
incident, and there is no evidence and no real claim that he did not harass
Elward. Perez's conduct after November 17 is powerful evidence that he
knew he had done something that was going to cost him his job. And again,
Sealy's witnesses testified and its defense in this case depends in part on its
argument that he was correct: based on its investigation (which did not

include listening to the recordings), it planned to fire Perez when he returned to Sealy on Monday November 22, 2021.

ER-22.

Based upon those factual findings, the trial court concluded Defendant was not prejudiced by the missing audio. *Id.* The Alfredo.wav Recording would have only related to a portion of a *single* conversation between Plaintiff and Perez—in the context of already-established sexual harassment—and almost certainly would have been effectively inaudible in light of the quality of the surviving portion. *See* FER-8-9, 13, 15.

Again, the trial court concluded Defendant made "no real claim that [Perez] did not harass Elward." ER-22. In addition to Defendant claiming it was initially going to fire Perez for sexually harassing Plaintiff, Defendant's surrounding actions also confirm the trial court's finding. If Defendant believed Perez was a victim of a subordinate participating in the sexual comments and conduct, Defendant could have—*and did not*—depose or otherwise call Perez to explain.

In response, Defendant speculates new potential facts, that the lost recordings might have "verbally signaled [Plaintiff's] openness to [sexually harassing] comments by Perez or otherwise suggested they were not unwelcome." Dkt. No. 25.1, p. 59. But the trial court found no basis for that speculation and, viewing the factual record, concluded Perez sexually harassed Plaintiff. *See* ER-22. In particular, the record included: (1) Plaintiff's deposition and declarations (which

48

were unrefuted and Defendant did not provide any contrary statements from Perez); (2) that Defendant had known Perez engaged in prior similar conduct; (3) that Perez resigned upon learning Plaintiff reported him; (4) that Defendant asserted it planned to fire Perez based upon Plaintiff's complaint, if Perez hadn't resigned; and, (5) that these was no evidence in the record indicating Perez wasn't sexually harassing Plaintiff. *See id.*

The trial court's factual findings were based on uncontroverted evidence in the record and are not clearly erroneous. *See Costle*, 843 F.2d at 379. Based upon those factual findings, the trial court concluded the lost audio—a portion of one conversation between Plaintiff and Perez—was not material to the already-established fact that the sexual harassment occurred. *See* ER-22.

### E. The trial court did not abuse its discretion in finding Defendant was not prejudiced.

The trial court concluded Defendant's motion for sanctions was "not without merit" because there were "irregularities" in Plaintiff producing the recordings. ER-21. That is undisputed; Plaintiff conceded she did not retain her old cell phone because she incorrectly believed all data had been migrated to her new phone, resulting in Defendant losing the opportunity to attempt to recover[3] the missing minutes of the Alfredo.wav Recording. FER-16-17.

---

[3] It is unknown whether the missing portion of the recording would have actually

49

The issue here is whether the trial court abused its discretion in not dismissing Plaintiff's claims due to her oversight. And that requires a finding of prejudice. *See* Fed.R.Civ.P. 37(e)(1). But the trial court found it was already established that Perez sexually harassed Plaintiff; Defendant had not been prejudiced in making any defense *actually based on the record*. *See* ER-22.

Defendant continues to bemoan the loss of a portion of the Alfredo.wav Recording because it "might have shown that Plaintiff verbally signaled" Plaintiff's "openness" to the sexual harassment. Dkt. No. 25.1, p. 68. But Defendant lost the *surveillance video* recording of that same conversation; actually seeing Plaintiff's physical reaction to Perez would presumably be much more telling. *See* FER-15-16. Only Defendant ever had access to those surveillance videos, which were never provided to Plaintiff. And that video could have been helpful to Plaintiff to demonstrate the nature of Perez's inappropriate conduct and the affect it reasonably had on Plaintiff to endure that as part of her everyday working conditions. *See* FER-14-15.

Discovery, however, is not a minefield to preclude resolution on the merits, but guidance to assure "just, speedy, and inexpensive determination" of cases on the merits "proportional to the needs of the case" and the "parties' resources." Fed.R.Civ.P. 1, 26(b)(1). Neither party here received everything they wanted, but

_____

been recoverable from Plaintiff's prior cell phone.

the trial court correctly concluded both parties had a sufficient record to assert their claims and defenses. *See* ER-22.

### F. There is no evidence of bad faith or an intent to deprive here.

The trial court did not make a factual finding on Plaintiff's motivation, reasoning: "The Court is not convinced, however, that Elward's alterations— whether they were an attempt to shade the evidence in her favor, a misguided effort to keep only what she thought were the pertinent passages, or simply a mistake— had a material effect on the case." ER-21-22. Plaintiff's husband relied on the representations of a T-Mobile employee that everything would be transferred to the new phone. FER-16-17. The circumstances here indicate a lack of technical knowledge rather than bad faith, in the same way Defendant's loss or destruction of investigation notes (ER-96-100) and surveillance videos (FER-15-16) more likely indicate a failing of HR protocol rather than an evidence-tampering conspiracy.

### G. Dismissal is not warranted under these facts.

Even if prejudice existed—and it did not—the trial court had no basis to dismiss an entire case over this discovery issue. To entertain dismissal, a court weighs five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits and

(5) the availability of less drastic sanctions." *Thompson v. Housing Auth. of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986). None of those factors support dismissal here:

### 1. "Public's Interest in Expeditious Resolution of Litigation"
### 2. "The court's need to manage its docket"

The first two factors, above, generally weigh in favor of sanctions where a party violates or refuses to honor a court order, thus needlessly cluttering a court's docket and injecting delay. *See Adriana Intern. Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990). Plaintiff did not refuse or avoid a court order. *Cf. Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2022) (these factors weighed in favor of dismissal where the plaintiff engaged in routine noncompliance, consuming appreciable amounts of the Court's time which would have other been available for other matters). The only delay and extra work occurred when Defendant refused Plaintiff's offer to provide any reasonable remedy to move forward, instead seeking to avoid the merits by inventing a "the victim encouraged the sexual harassment" argument, despite it being contrary to all surrounding facts. *See* FER-9, 14-17.

### 3. "The risk of prejudice to the party seeking sanctions"

The trial court correctly held Defendant was not prejudiced by the loss of evidence because whether Plaintiff was sexually harassed was not in dispute. ER-22. The record is replete with corroborating evidence of Perez's harassment. *See*

Dkt. No. 16.1:10-22 (a summary of the facts, including ER-42 *et seq.* (Plaintiff's deposition); ER-140-141 (the account of a coworker—who ultimately quit due to how Defendant handled the harassment—describing Perez's conduct as a "sexual predator"); ER-36-37 (Plaintiff's HR witness declaration)).

Furthermore, for Defendant's theory to work in the undisputed timeline, Plaintiff would have seduced her manager to get a promotion, but on the eve of that seduction bearing fruit, spurned her manager and turned him in for sexual harassment instead of going on the supervisor trip to further her chances of promotion. *See* FER-31-36. That defense-imagined behavior makes no rational sense.

To be clear, Plaintiff did not welcome or invite her own sexual harassment; she endured it until she had enough evidence to report it to an employer with a terrible track record for listening to and protecting victims. *See* Dkt. No. 16.1:11-26 (factual summary). But assuming *arguendo* that a missing snippet of the unintelligible recording in question allowed a reasonable jury to infer that Plaintiff was participating in her own sexual harassment *during that one conversation* (something contrary to everything else in the record), *after that conversation*, Plaintiff turned in Perez for sexual harassment. *See* ER-84-85, 148-149. That above, *imagined* snippet would *still* not be dispositive on Plaintiff's claims. Even when a victim initially consents to some sexual harassment or sexual acts, (a) the

power differential calls into question valid consent, and (b) the victim can still prevail in an action for sexual harassment if she later retracts that "consent" and the sexual conduct continues. *See Henningsen*, 102 Wn.App. 828 (a plaintiff still recovered under both hostile work environment and *quid pro quo* claims where plaintiff consented to sex with her supervisor, had sex with him, then stopped and reported subsequent sexual harassment). Here, Plaintiff reported unwelcome sexual harassment; even if she welcomed prior sexual harassment (and there is no evidence or inference supporting that), her claims would survive. *See id.*

Defendant's risk of prejudice must be actual prejudice, not "tenuous" connections and "highly speculative" claims. *See Livingston*, 910 F.Supp. at 1492. Ultimately, should this matter go to trial, the fullness and consistency of the record will not prejudice Defendant with "incomplete and spotty evidence." *See Anheuser-Busch v. Natural Beverage Distributors*, 69 F.3d 337, 354 (9th Cir. 1995). There is no legally-recognized prejudice here.

### 4. "The public policy favoring disposition of cases on their merit"

Dismissing this case would result in a victim of sexual harassment being barred from access to the justice system primarily because her husband, in good faith with a layperson's understanding of technical and legal nuances, believed the T-Mobile clerk's claim that transferring everything from Plaintiff's old phone to her new phone would not lose ESI. *See* FER-16-17.

54

Public policy favors resolution on the merits. And more so, Washington law requires liberal construction of the Washington Civil Rights Act (including RCW 49.60.180(1)) to "eliminat[e] discrimination in employment," which "threatens not only the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state." RCW 49.60.010; .020. Heightened public interest here weighs heavily against dismissal.

### 5. "The availability of less drastic sanctions"

The final consideration—availability of less drastic sanctions—is intended as a check on a court's ability to invoke the extreme remedy of precluding a litigant from having the matter resolved on the merits. *See Adriana Intern. Corp. v. Thoeren*, 913 F.2d 1406, 1412-1413 (9th Cir. 1990). Far from dismissal, the trial court here—in its discretion—did not deem the circumstances to warrant any sanction. *See Costle*, 843 F.2d at 379.

The discovery rules are intended to provide a level playing field. Large corporations have the ability to fund Big-Law resources and extensive discovery efforts. This is a significant advantage over victims with little to no financial resources, technological expertise, and legal savvy engaging small law firms with limited budgets to fight the goliath. It would be a dangerous precedent for courts to begin precluding victims from resolution on the merits due to good-faith, layperson discovery errors that do not materially prejudice the corporations.

55

That approach would contradict the duty of the courts *and legal counsel* to apply and administer discovery "to secure the just, speedy, and inexpensive determination of every action and proceeding," Fed.R.Civ.P. 1, and to apply its rules "proportional to the needs of the case," "the parties' resources," and "whether the burden or expense of the proposed discovery outweighs its likely benefit," Fed.R.Civ.P. 26(b)(1).

### 6. Conclusion: The trial court correctly refused to impose sanctions.

Not only did the trial court correctly refuse to impose sanctions here, but it would also have abused its discretion had it dismissed Plaintiff's claims based upon a non-material discovery dispute. *See Costle*, 843 F.2d at 379.

## VI. CONCLUSION

To uphold Defendant's summary judgment, this Court would need to: view the record in the light most favorable to Defendant; draw major factual inferences in favor of Defendant; and, read quotes and other statements out of the context of the record and, at times, contrary to how sexual harassers attempt to cover up and justify harassment. Such an outcome would contradict the record and violate the legal standard for summary judgment.

The trial court's conclusion it was bound by *Sangster* to apply the *Faragher-Ellerth* federal defense to the Washington state law was in error and should be reversed in light of Washington Supreme Court jurisprudence or, alternatively,

Appellant's Motion to Certify should be granted. Reversal without resolution of *Faragher-Ellerth* would require a second appeal should that defense succeed at trial.

Because the record demonstrates unrefuted sexual harassment, and Defense Counsel's unfounded speculations cannot create a factual dispute, Plaintiff is entitled to summary judgment without application of the *Faragher-Ellerth* defense. If *Faragher-Ellerth* applies, Plaintiff is entitled to have a jury hear her story and draw its own inferences from the evidence concerning the reasonableness of Plaintiff's lack of faith in Defendant and the inadequacy of Defendant's monitoring of a known sexual harasser and its response to address and condemn uncontradicted and corroborated sexual harassment.

Defendant's spoliation cross-appeal requires this Court to: ignore the discretion of a trial court in managing what was a complex and conflictive discovery between two parties, where each party lost requested evidence; and, find clear error in the trial court's factual finding that sexual harassment occurred, despite the support of the uncontradicted evidence in the record. Defense Counsel's baseless speculation that the victim was welcoming or encouraging sexual harassment was contradicted by the record and does not warrant any sanction, much less dismissing an entire claim with established sexual harassment. Defendant's cross-appeal should be denied.

Plaintiff reiterates its request that this Court vacate the trial court's award of Defendant's costs, *see* ER-2-3, and award Plaintiff attorneys' fees, costs, and reasonable expenses, *see* RCW 49.60.030(g)(2); FRAP 39.

Date: March 20, 2024.

> */s/ Hugh J. McGavick*
> Hugh J. McGavick
> Hugh J. McGavick, P.S.
> 855 Trosper Rd. SW #108-298
> Tumwater, WA 98512
> P: (360) 876-0215
> F: (360) 584-9381
> E: hugh@hughmcgavick.com
> WSBA #12047
>
> Asa C. Garber
> Reason Legal, LLC
> 150 S. Harrison St., Unit 1
> Denver, CO 80209
> P: (720) 504-5294
> E: asa@reasonlegal.com
> WSBA #43588
>
> *Attorneys for Appellant Jamie Elward*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

**Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6**

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s) No. 23-4421; 23-4143**

The undersigned attorney or self-represented party states the following:

[ X ]  I am unaware of any related cases currently pending in this court.

[  ]  I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[  ]  I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature**  */s/ Hugh J. McGavick*          **Date** March 20, 2024.

59

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s) 23-4421; 23-4143**

I am the attorney or self-represented party.

**This brief contains 12,999 words,** excluding the items exempted by Fed. R.

App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P.

32(a)(5) and (6).

I certify that this brief complies with the word limit under FRAP 27(d)(1)
and page length restriction under Cir. R. 27-1(1)(d).

**Signature** */s/ Hugh J. McGavick*         **Date** March 20, 2024.

60